1  ;

2

3

4

5

6

7

8

9                    **UNITED STATES DISTRICT COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

11

12

13

14

15  HELEN G. VILLEGAS,              )        ED CV 14-00874-SH
                                   )
16              Plaintiff,         )        MEMORANDUM DECISION AND
                                   )        ORDER
17                                 )
     v.                            )
18                                 )
                                   )
19  CAROLYN W. COLVIN, Acting      )
    Commissioner of Social Security,)
20                                 )
              Defendant.           )
21  _____)

22        This matter is before the Court for review of the Decision by the Commissioner of

23  Social Security denying plaintiff's application for Supplemental Security Income.

24  Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled

25  by the undersigned.  The action arises under 42 U.S.C. § 405(g), which authorizes the

26  Court to enter judgment upon the pleadings and transcript of the record before the

27  Commissioner.  The plaintiff and the defendant have filed their pleadings (Plaintiff's

28  Brief in Support of Complaint ["Plaintiff's Brief"]; [Defendant's Opposition], and the

defendant has filed the certified transcript of record.  After reviewing the matter, the Court concludes that the Decision of the Commissioner should be affirmed.

## I.  BACKGROUND

On October 7, 2010, plaintiff Helen G. Villegas filed an application for Supplemental Security Income, alleging an inability to work since July 9, 2008.  (See 1 Administrative Record ["AR"] 128-36).  On November 16, 2012 (following a hearing on August 1, 2012, see 1 AR 109-27), an Administrative Law Judge ("ALJ") determined that plaintiff had the following severe impairments -- major depressive disorder and generalized anxiety disorder-- but found that plaintiff was not disabled within the meaning of the Social Security Act.  (See 1 AR 29-39).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see 1 AR 1-4), plaintiff filed this action in this Court.

Plaintiff solely alleges that the ALJ failed to provide clear and convincing reasons for finding plaintiff not credible.  After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

## II.  DISCUSSION

ISSUE NO. 1:

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding her not fully credible.  Defendant asserts that the ALJ properly assessed plaintiff's credibility.

At the administrative hearing, plaintiff testified that she is single (she has had an off and on relationship with her husband, but she could not remember when their relationship ended).  She is homeless, and stays with different people, including her sister twice a week (for the past 9 or 10 years) and another family member twice a week.  She has limited belongings; she carries what she needs in a little briefcase.  She has not been

incarcerated the past five years; she was incarcerated in 2004.  She last worked in 1996; she has been receiving general relief for 9 to 10 years.  She one time worked for a temporary agency for two days, but since it was not data entry work she was not comfortable with it.

She testified she typically gets up at 8 or 9 a.m.  She is able to prepare simple meals, dress herself, and take a shower or bath.  She drives herself to the market (once a month) and to doctor's appointments only.  The driving takes 4 hours a week.  Shopping at the market takes approximately 2 hours.  When she stays with others, she helps clear the table; she does not wash the dishes, mop or dust or sweep or vacuum, or take out the trash.

With respect to social activities, she does not have any hobbies and does not read.  She last had a hobby about 8 or 9 years earlier.  She watches television 2 to 3 hours a day, listens to music, and occasionally watches movies.  She chats with her sister when her sister is around.  Although she has a cellular phone, she does not use it for games or for the internet.  She does not garden, do yard work, or socialize with others (she stays by herself.  She goes to church one Sunday a month (45 minutes).  She does not attend any formal group meetings.  She stays home almost every day, feeling isolated (like she is drowning slowly) and crying.

She testified she has lost about 45 pounds the past two years.  When asked about what problems she has that prevent her from working on a full-time basis, she said she cannot handle stress, is a nervous person, has anxiety, and gets chronic pain throughout her body (particularly on her left side, from her legs to her shoulders).  Her chronic pain began as a result of a left pelvis fracture suffered in a 2000 vehicle incident involving her fiancé.  When asked if she is on medication, she stated, "I was just told to take ibuprofen but I've been . . . told to go back to see my family practitioner so she can refer me . . . back to therapy again."  (She had made an appointment to see her family practitioner).

She testified that she has has been seeing Dr. Boda, a psychiatrist, at Kaiser Corona for a while. She has gone to one therapy session (which she found helpful), and has scheduled a second session. She was taking Prozac, Buspar, and Dexilant sleeping pills for anxiety and depression. She has taken the medications for longer than a couple years, but there have been gaps in her taking them. When asked if her medications helped her with her anxiety, she stated she had not taking them regularly because she could not afford them (but she is beginning to take them again). The medications help her a little.

She testified she can stand or sit for 5 to 10 minutes before experiencing pain. The heaviest item she can lift is her purse.

She testified that she had some past difficulties with drugs and alcohol, but has been clean and sober since September 2004. (See 1 AR 111-24).

The ALJ found that plaintiff had the following residual functional capacity ("RFC")[1]: the ability to perform the full range of medium work[2] with certain limitations, including: sitting, standing and/or walking for 6 hours out of an 8-hour workday with customary breaks; kneeling, stooping, crawling crouching and climbing ramps and stairs frequently, and climbing ladders, ropes and scaffolds occasionally; performing fine manipulation with her left, non-dominant hand frequently; sustaining attention, concentration, persistence, and pace in at least 2-hour blocks of time, with the ability to perform detailed and complex tasks; the ability to interact appropriately with co-workers and supervisors, but requiring casual, non-intense contact with the public (such as a ticket

---

[1]     A Residual Functional Capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[2]     "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

taker); and due to low tolerance for stress, requiring a work environment free from fast-paced production or assembly line work.  (See 1 AR 33).

After summarizing plaintiff's testimony, the ALJ found that plaintiff's "allegations concerning the intensity, persistent and limiting effects of his symptoms are less than fully credible.  The allegations of severe emotional problems causing functional limitations are inconsistent with the objective medical evidence, which indicates an attempt by the claimant to exaggerate the severity of her symptoms."  (1 AR 34).  The ALJ then stated the following:

> As stated above, the claimant has provided a very limited treatment history consisting of one psychiatric evaluation in pursuit of a worker's compensation claimant and three outpatient treatment sessions in 2010 and early 2011.  From the record, it appears that the claimant was employed as a data entry clerk for a warehouse in 1996 and was terminated while on medical leave for stress.  She reported she was under an extreme amount of work stress because she perceived that she was doing the job of three employees and was being harassed by her employer.  Her worker's compensation claim was denied and she lived on State disability until 1997.  While, it was recommended that she receive vocational rehabilitation, it is unclear whether she participated in the service.  (Exhibit 1F/8-35)

> The claimant has alleged on onset date of disability as July 9, 2008, however it is unclear from the record as to why she has selected this date.  It appears that she last worked in 1996 and then did not start seeking mental health treatment until September 2010.  At the first visit, she reported symptoms of depression and anxiety while presenting with an unremarkable mental status examination.  She was diagnosed with depression and given a Global Assessment of Functioning

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(GAF) of 70-61[3] indicating mild symptoms.  Further, her therapist stated that she was generally functioning pretty well.  (Exhibit 11F/27-31) She first saw Robert Bota, M.D. at her second treatment session in November 2010.  At this visit, she reported being stressed and depressed but described her stress as a five out of ten. Further, she complained that she did not like her last doctor because she did not feel that she was helped enough with her disability application.  This statement coupled with the lack of treatment indicates that the claimant was more motivated in obtaining disability benefits rather than medical help for her alleged emotional issues.  (Exhibit 11F/62-63) Dr. Bota reported that the claimant presented with a normal mental status examination and he diagnosed her with major depression, moderate and with a GAF of 60-51[4] indicating moderate symptoms.  He prescribed psychotropic medication.  (Exhibit 11F/64-65) She did not see Dr. Bota again until January 2011 and at this visit, she reported that her depression had improved despite not taking any medication.  Again, her mental status examination was normal and Dr. Bota assessed that she was improving.  (Exhibit 11F/85-89) There are no other treatment records after January 2011 indicating that the claimant's alleged mental issues resolved or were not as debilitating as she has claimed.

The claimant testified that she suffers from chronic pain, however there is no medical evidence showing that she has anything physically wrong with her.  From the medical records, it appears that she went for some routine physical

---

[3]    A GAF score of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships (American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision (DSM-IV-TR), 34 (2000)).

[4]    A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers) (American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision (DSM-IV-TR), 34 (2000)).

examinations and other mundane physical issues including urinary tract infections and skin infections from June 2006 to March 2011.  (Exhibit 3F and 11F/98-107)  There is no evidence showing that she ever sought treatment for chronic pain or was diagnosed with a substantial physical impairment.  (AR 34-35, footnotes in original).

The ALJ then stated: "After careful consideration of the evidence, the undersigned finds that the claimant's medical determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (AR 35).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms.  Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).  Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating clear and convincing reasons for doing so.  Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, substantial evidence supports the ALJ's finding that plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was not fully credible.[5]

The first reason given by the ALJ -- that there was a lack of objective medical evidence supporting plaintiff's testimony that she suffered severe emotional problems and chronic pain -- was supported by the record.  See Cotton v. Bowen, 799 F.2d 1403, 1406 (9th Cir. 1986)("[T]he Secretary may decide to disregard [a claimant's pain] testimony whenever the claimant fails to submit objective medical findings establishing a medical impairment that could reasonably be expected to produce the claimed pain."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.");  Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

As noted by the ALJ (see 1 AR 34-35), plaintiff's psychiatric treatment records were limited and did not reflect plaintiff having serious psychological limitations (see 1 AR 210-38, 490-94, 524-30, 548-52).  Indeed, as noted by the ALJ (see 1 AR 35), in January 2011, plaintiff's treating psychiatrist, Dr. Bota, found that even without medication plaintiff's functional limitations were moderate and that plaintiff's depression had improved.  (See 1 AR 548-52).  Moreover, as noted by the ALJ (see 1 AR 35) and which plaintiff does not attempt to dispute, there is no indication in the record that plaintiff suffered chronic physical pain or was diagnosed with a severe physical impairment.

---

[5]   The Court will not consider reasons for finding plaintiff not fully credible that were not given by the ALJ in the Decision.  See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

1    However, another reason given by the ALJ -- the inconsistency between the

2    alleged onset date of plaintiff's disability (July 9, 2008), <u>see</u> 1 AR 128, and the date

3    plaintiff began to seek mental health treatment (September 2010), <u>see</u> 1 AR 490-94,

4    which was unrelated to a worker's compensation claim based on psychiatric issues

5    following her 1996 termination from work (<u>see</u> 1 AR 204-46) -- was also supported by

6    the record.  <u>See</u> <u>Light v. Social Security Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)("In

7    weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

8    inconsistencies either in his testimony or between her testimony and his conduct, his

9    daily activities, his work history, and testimony from physicians and third parties

10   concerning the nature, severity, and effect on the symptoms of which he complains.");

11   <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991)("Another relevant factor [in a

12   credibility determination] may be 'unexplained, or inadequately explained, failure to seek

13   treatment or follow a prescribed course of treatment.'").[6]   The ALJ correctly found that

14   if plaintiff was claiming an onset date of 2008, but did not seek mental health treatment

15   until 2010, there was an inconsistency between her actions and her assertion of an onset

16   date two years earlier.

17

18

19

20

21

22

23      [6]    After noting that when plaintiff visited Dr. Bota on November 29, 2010,
24   plaintiff "complained that she did not like her last doctor[s] because she did not feel that
     she was helped enough with her disability application" the ALJ wrote: This statement
25   coupled with the lack of treatment indicates that the claimant was more motivated in
     obtaining disability benefits rather than medical help for her alleged emotional issues."
26   (See 1 AR 35, citing 1 AR 525-26).  Even assuming <u>arguendo</u> that the ALJ's finding was
     not a proper basis for discrediting plaintiff, <u>see</u> <u>Edgar v. Astrue</u>, 2010 WL 2730927, *5
27   (D. Or. 2010)("The ALJ may not chastise a claimant for seeking disability benefits
     payments; such circumvents the very purpose of disability benefit applications."), as
28   plaintiff contends, the Court's determination above that the ALJ's other reasons for
     finding plaintiff partially not credible were proper renders such error harmless.  <u>See</u>
     <u>Carmichael v. Commissioner, Soc. Sec. Administration</u>, 533 F.3d 1155, 1162-63 (9th Cir.
     2008); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

## **ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED:  February 2, 2015

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE